**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:                                                                          CASE NO. 8:21-bk-02316-CPM

**DCR ENGINEERING, INC.,**                                         CHAPTER 11

    Debtor.
_____/

## CHAPTER 11 CASE MANAGEMENT SUMMARY

    **DCR ENGINEERING, INC.** (the "Debtor" or "DCR Engineering"), by and through its undersigned counsel, and pursuant to Administrative Order FLMB 2009-1 and Local Rule 2081-1, hereby files its Chapter 11 Case Management Summary, and states as follows:

    1.    On May 4, 2021 (the "Petition Date"), DCR Engineering filed its petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").

    2.    No trustee has been appointed. The Debtor continues to operate its businesses and manage its property as a debtor-in-possession under §§ 1107 and 1108 of the Bankruptcy Code.

    **I.    Description and History of Debtor's and Affiliates' Business Operations**

    *A.    Debtor and Affiliate Entities*

    3.    DCR Engineering is a Florida corporation formed on June 26, 1995. DCR Engineering's principal address is 6977 Hayter Drive, Lakeland, Florida 33813.

    4.    DCR Engineering is controlled by Dale C. Rossman ("Mr. Rossman") who is the President and sole Director of the Debtor.

    5.    At its inception, DCR Engineering provided full-service project engineering, design/build services and automated control system solutions to the industrial marketplace. The Debtor employed in excess of fifty (50) full-service professional engineers including structural,

mechanical, electrical, and controls engineers holding licenses in many states.  DCR Engineering offered comprehensive engineering solutions to process-based industries, including the power generation, alternative fuels, water/wastewater, heavy industrial, manufacturing and food and beverage industries.  Additionally, the Debtor was the creator of certain proprietary Fire Station Automation and Alerting Software that provides emergency alert and response services (the "Mach Alert Software") and possessed a sole source licensing agreement to use the software in its operations.  The Mach Alert Software is a highly efficient platform to operate 911 services in many cities and countries around the world.  The foundation of the Mach Alert Software is the Mach Alert Source Code, which is intangible property that has been registered with the United States Copyright Office since August 26, 2011.

6. The Debtor worked with affiliated, non-debtor companies to assist with operations. Specifically, DCR Mobiletech, Inc. ("Mobiletech") and DCR Business Solutions ("Business Solutions")(collectively, the Debtor, Mobiletech and Business Solutions as the "DCR Entities") provided functional and logistical support to DCR Engineering.  For example, Mobiletech would supply the computers, tools and furniture for projects.  Business Solutions would provide the administrative and logistical support, oversee sales and marketing and license the use of the Mach Alert Software.

7. The Mach Alert Source Code and Mach Alert Software was transferred by the Debtor to DCR Business Solutions in July 2015, with the Debtor retaining an exclusive license from DCR Business Solutions for the Mach Alert Source Code and Mach Alert Software.

### B. Debtor's Customers and Motorola Contract

8. For many years, business was booming. Revenue for the Debtor exceeded $10,000,000.00 annually. One of the Debtor's largest customer was Motorola Solutions ("Motorola"). Another affiliate of DCR Engineering was Dale C. Rossman, Inc. One of Dale C Rossman, Inc.'s largest customers was Edwards Electric Corporation ("Edwards"). Edwards for all relevant times, is controlled by Mr. Ken Groves ("Mr. Groves"). The Motorola Contract is an extremely lucrative agreement that provided software and equipment for emergency services to governmental entities, and was the primary source of income for the Debtor up to the Petition Date.

### C. Debtor's Prior Employees and Executives

9. For all relevant times, the Debtor had a number of (presumably) trusted employees. Ernie Ramos, Kevin Linton, Sarah Drake, Christopher Atchison, John Lander, Thomas Gillen, Perry Danner, Joseph Ancion and Stephen Thomas (collectively, the "Ex-DCR Employees") were all employees with high levels of insight into the strategic direction of the Debtor. The Ex-DCR Employees also were privy to extensive details concerning the proprietary software and assets of the Debtor and its affiliates, including but not limited to, the Mach Alert Source Code.

## II. Reasons for Bankruptcy Filings

### A. Debtor's Financial Partners and Pre-Judgment Garnishment Attempts

10. In July 2014, Hancock Whitney Bank entered into several loan agreements with the Debtor and its other affiliated entities, which granted Hancock Whitney Bank a security interests in all assets of the Debtor and other DCR entities, including general intangibles and software (the "Collateral"). The major component of the general intangibles was the Mach Alert Source Code. For a number of years, Hancock Bank and the DCR Entities enjoyed a mutually beneficial

relationship. However, in the fall of 2018, the relationship changed when the Debtor began experiencing cash flow issues.

11. On August 8, 2018, Hancock Bank sent a demand letter to all of the Debtor's customers demanding that they pay any accounts receivable that were owed to the Debtor directly to Hancock Whitney Bank. This letter was recanted very quickly by Hancock Whitney Bank after the bank reached an agreement with the debtor to allow the sale of certain DCR Engineering assets to a new company Mach Alert Technologies tot be formed by Ken Groves. The letter destabilized contractual relationships between the Debtor and its affiliated companies with many of its customers. The letter also caused significant concern to Mr. Groves and Edwards as Edwards was one of the largest clients of Dale C Rossman, Inc. at the time and Edwards was preparing to enter into new contracts with Dale C Rossman, Inc. with a value in excess of $10,000,000.00.

### B. The Asset Purchase Agreement

12. In an effort to preserve the significant going concern value of the company, Mr. Groves, Edwards Electrical and the Debtor developed a business strategy that would: (i) transfer certain of the Debtor's (as well as non-debtor) assets (including the Mach Alert Source Code rights) to a new entity owned by Mr. Groves; (ii) make an immediate cash payment to Hancock Whitney Bank on account of its existing debt; (iii) provide an avenue for Mr. Groves, Edwards Electrical and the Debtor to continue business in order to pay down the Hancock Whitney Bank debt obligations while servicing the needs of Edwards Electrical (work valued in excess of $10,000,000.00).

13. Through a series of negotiations with Hancock Bank, the Debtor and its affiliates, and Mach Alert Technologies (the new entity formed by Mr. Groves to hold the rights to the Mach Alert Source Code) in late 2018, the parties entered into an Asset Sale Agreement for the Mach Alert

Assets to effect the sale of the assets from the DCR Entities to Mach Alert Technologies through a private sale. Hancock later requested that the sale be accomplished through a public UCC sale because the sale needed to be consummated quickly and Hancock Bank was concerned it could not obtain a release from other DCR Lenders timely. The parties negotiated an asset sael agreement and agreed that if the UCC sale was not done in accordance with the Asset Sale Agreement, the Mach Alert Assets would not be transferred to any purchaser at the UCC sale. All parties agreed to this arrangement.

### B. The Botched UCC Sale and Attempted Transfer of Assets

14. In late September and early October, 2018, Hancock Whitney Bank, Mach Alert Technologies and the DCR Entities heavily negotiated every detail of the UCC sale including the deposit requirement, the deposit deadline as well as stipulations for the transfer of the Motorola Contract and Source Code that could not be transferred absent adhering to the express terms of the Asset Sale Agreement. On October 16, 2018, Hancock Bank confirmed to the Debtor and Mach Alert Technologies that the only qualified bidder for the UCC sale was Mach Alert Technologies. In reliance on this representation, the Debtor, other DCR entities and secured creditor Fowl Cay Limited Partnership ("Fowl Cay") executed and provided Hancock Bank the consents to UCC Sale for the Mach Alert Assets including the stipulation for the transfer of the Motorola Contract and Mach Alert Source Code.

15. Less than 24 hours after receiving the releases, less than 24 hours before the UCC auction and after it had received the releases and other stipulations, Hancock Bank advised the Debtor and Mach Alert Technologies that they received and accepted a late deposit from an entity that was just created, Mach Alert-Delaware and they would be permitted to participate in the auction.

16. Over the objections of the Debtor, other DCR Entities, Fowl Cay and Mach Alert Technologies (**including revocation of the stipulation related to the release of other liens and transfer of the Motorola Contract and Mach Alert Source Code**), Hancock Bank's counsel determined that Mach Alert-Delaware was the high bidder and decided to proceed with the closing of the sale despite the presented issues.

### D. The Attempted UCC Sale Aftermath and the Mutiny by the Ex-DCR Employees

17. The Debtor soon uncovered that, Andrew A. Jacobson ("Mr. Jacobson") had not only created the Mach Alert-Delaware entity, but had, in fact, been in constant contact with Hancock Whitney Bank throughout the auction and sale procedures process. Hancock Whitney Bank never disclosed any of these communications with the DCR Entities, Mach Alert Technologies, Fowl Cay or Mr. Rossman. Immediately following the auction and protest DCR continued its operations. After two days DCR learned that its employees had been in contact with Mr. Jacobson and when confronted by Dale Rossman the employees resigned from DCR. In the days prior to the sale and in the days the employees continued to be employed by DCR Engineering they downloaded large quantities of data from the DCR Entities' servers. This data included the Mach Alert Assets and Mach Alert Source Code and everything they could find that involved or related to performing the Motorola Agreement. They also removed other assets from the DCR premises without authorization.

18. In October 2018, Hancock Bank executed a Bill of Sale and Assignment of the Mach Alert Assets and the Motorola Agreement to Mach Alert-Delaware. Immediately following the sale some of the DCR Employees were seen loading up trucks full of property and equipment that was owned by the Debtor and other DCR entities. When confronted with the move, the DCR Employees explained they "needed it for a presentation for a customer." Two days later and only when

confronted by Dale Rossman the DCR employees quit their jobs and began immediately working for Mach Alert-Delaware. Many of these former employees had confidentiality agreements and Covenants Not to Compete with the DCR Entities and the Debtor.

19. In December 2018, DCR Engineering advised Motorola that it was in breach of the Motorola Agreement for transferring the benefits and burdens of the Motorola Agreement to Mach Alert-Delaware while the Motorola Agreement was still in full force and effect with DCR Engineering. Motorola's breach of the agreement caused DCR Engineering to no longer be able to fully function.

20. Subsequently litigation ensued. The DCR Entities filed ten (10) claims against Mach Alert, the Ex-DCR Employees, Mr. Jacobson, Hancock Whitney Bank and Motorola. The claims include: (i) replevin; (ii) tortious interference with an advantageous business relationship; (iii) breach of contract (Motorola Contract); (iv) breach of contract (Asset Sale Agreement); (v) Declaratory Relief; (vi) breach of contract (non-compete and non-disclosure); (vii) civil theft; (viii) tortious interference related to the non-disclosure; (ix) breach of contract (non-disclosure against individuals); and (x) conspiracy related to the tortious interference with an advantageous business relationship (the "Core Claims"). The Core Claims have been removed to bankruptcy court. The Debtor plans to amend the complaint to allege claims of turnover, equitable subordination, determination of validity, priority or extent of lien or interest in the Debtor's property as well as withdrawal the reference related to the Core Claims.

21. Additionally, Hancock Whitney Bank and other creditors ramped up litigation to attempt to collect against the Debtor and other DCR Entities.

### III. Ownership Interests in the Debtors and Salaries and Benefits of Officers and Directors During the Year Preceding Bankruptcy

22. The Debtor and its affiliates are 100% owned by DCR Services, Inc. DCR Services, Inc. is 100% owned by Dale C. Rossman ("Mr. Rossman"). Mr. Rossman is the only director and/or officer for the Debtor and is the person in control for all intents and purposes. Mr. Rossman receives no salary or compensation from the Debtor, even though he contributes the majority of his time managing the Debtor's business.

### IV. Amounts Owed to Various Classes of Creditors

23. As of the Petition Date, DCR Engineering was indebted to its secured creditors in the following approximate amounts:

| Secured Lender | Outstanding Debt Amount |
| --- | --- |
| Hancock Bank (UCC on personal property) | $ 7,065,053.98 |
| Hancock Bank (UCC on personal property) | $ 935,998.20 |
| Fowl Cay Limited Partnership (UCC on personal property) | $ 3,331,385.04 |
| Internal Revenue Service (all assets) | $ 856,213.74 |
| Internal Revenue Service (all assets) | $ 83,946.79 |
| WPT Land 2 LP (Judgment Lien) | $ 311,387.52 |
| **Total Secured Debt** | **$12,583,985.27** |

24. DCR Engineering has approximately $730,000.00 of non-insider unsecured debt, mostly consisting of trade balances and credit cards. There is approximately $3,000.00 in priority debt.

**V.     General Description and Approximate Value of Debtors' Current and Fixed Assets**

25.     DCR Engineering has account receivables with a face value of over $472,000. In February 2019 Hancock Bank sent another letter directing DCR receivables to the bank. The value of these receivables is uncertain at this time. DCR Engineering also holds the license to the rights of the Mach Alert Source Code which value exceeds $5,000,000.00. The Debtor also holds significant litigation claims against Hancock Bank, Mach Alert-Delaware, Motorola and the ex-DCR Employees for approximately $15.1 million.

**VI.    Number of Employees and Amounts of Wages Owed as of Petition Date**

26.     As of the Petition Date, the Debtor does not have any paid employees.

**VII.   Anticipated emergency relief to be requested within 14 days from the Petition Date**

27.     Debtor does not anticipate requesting emergency relief.

**RESPECTFULLY SUBMITTED** this 11th day of May 2021.

/s/ Justin M. Luna
**Justin M. Luna, Esq.**
Florida Bar No. 0037131
jluna@lathamluna.com
**LATHAM, LUNA, EDEN & BEAUDINE, LLP**
bknotice@lathamluna.com
111 N. Magnolia Ave., Suite 1400
Orlando, Florida 32801
Telephone: 407-481-5800
Facsimile: 407-481-5801
*Attorneys for the Debtor*

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

In re:                                                                CASE NO. 8:21-bk-02316-CPM

**DCR ENGINEERING, INC.,**                          CHAPTER 11

    Debtor.
_____/

**CERTIFICATE OF SERVICE**

    **I HEREBY CERTIFY** that a true copy of the **CHAPTER 11 CASE MANAGEMENT SUMMARY** has been furnished either electronically and/or by U.S. First Class, postage prepaid mail to: DCR Engineering Services, Inc., 6977 Hayter Dr., Lakeland FL 33813; Hancock Whitney Bank, 100 2nd Avenue North, Suite 200, St. Petersburg, FL 33701; Fowl Cay Limited Partnership, 6977 Hayter Dr., Lakeland, FL 33813; the parties entitled to receive CM/ECF noticing; the secured creditors and the twenty largest unsecured creditors as shown on the matrix attached to the original of this motion filed with the Court; and Office of the United States Trustee, 501 E Polk Street, Suite 1200, Tampa, FL 33602, this 11th day of May 2021.

                                                              /s/ Justin M. Luna
                                                               **Justin M. Luna, Esq.**

| | | |
|---|---|---|
| Label Matrix for local noticing<br>113A-8<br>Case 8:21-bk-02316-CPM<br>Middle District of Florida<br>Tampa<br>Tue May 11 09:26:52 EDT 2021 | Bank of America<br>PO Box 15796<br>Wilmington, DE 19886-5796 | Bitworks Systems, Inc.<br>1319 Los Amigos Ave.<br>Simi Valley, CA 93065-4026 |
| Bush Ross, P.A.<br>220 South Franklin Street<br>Tampa, FL 33602-5330 | Endress & Hauser<br>3250 Endress Place<br>Greenwood, IN 46143 | Fowl Cay Limited Partnership<br>6977 Hayter Dr.<br>Lakeland, FL 33813-4516 |
| Fowl Cay Limited Partnership<br>c/o Michael A. Nardella, Esq.<br>Nardella & Nardella, PLLC<br>135 W. Central Blvd,. Ste. 300<br>Orlando, FL 32801-2435 | Hancock Bank<br>100 2nd Ave. North<br>Suite 200<br>Saint Petersburg, FL 33701-3338 | Hancock Bank Visa<br>PO Box 4019<br>Gulfport, MS 39502-4019 |
| Internal Revenue Svc*<br>Spec Proc Function<br>PO Box 35045, Stop 5720<br>Jacksonville, FL 32202 | McCormick Stevenson<br>25400 US Highway 19N<br>Suite 162<br>Clearwater, FL 33763-2176 | Modspace<br>7901 4th St.<br>Suite 300<br>Saint Petersburg, FL 33702-4399 |
| Motorola Solutions, Inc.<br>500 West Monroe St.<br>Chicago, IL 60661-3671 | Regus Management Group<br>3000 Kellway Drive<br>Suite 140<br>Carrollton, TX 75006-3355 | Selectek Inc.<br>2015 Vaughn Rd.<br>Ste. 130<br>Kennesaw, GA 30144-7851 |
| Spectrum Enterprise<br>PO Box 223085<br>Pittsburgh, PA 15251-2085 | Stirling United Plaza<br>PO Box<br>Dallas, TX 75391-0001 | Syscon LLC<br>12349 Jess Walden Rd.<br>Dover, FL 33527-4908 |
| Trihedral, Inc. - Florida<br>4700 Millenia Lakes Blvd #260<br>Orlando, FL 32839 | WPT Land 2 LP<br>700 Dresher Rd<br>Suite 150<br>Horsham, PA 19044-0138 | End of Label Matrix<br>Mailable recipients    19<br>Bypassed recipients     0<br>Total                   19 |